# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JENNA OLIVER | : | |
| :--- | :--- | :--- |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NORDSTROM KING OF PRUSSIA, | : | No. 10-5340 |
| Defendant. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                          **December 14, 2010**

Jenna Oliver is suing her former employer, Nordstrom, Inc., alleging that it unlawfully fired her in April of 2009 based on her gender.[1] She also contends that Nordstrom barred her from entering its property and thus interfered with the contractual relations she had with her subsequent employer. Nordstrom seeks to stay the proceedings before this Court and to compel arbitration based on an agreement between Oliver and Nordstrom. Oliver argues that the arbitration agreement is invalid and unenforceable under Pennsylvania contract law. The Court concludes that the parties have validly agreed to arbitrate certain claims. The scope of the agreement is not, however, as broad as Nordstrom believes. Accordingly, the Court grants Defendant's motion in part and denies it in part.

## I. BACKGROUND

### A. Oliver's Allegations

Oliver began working for Nordstrom in March of 2009 as a Business Manager for Philosophy, a cosmetics product line. (Compl. ¶ 6.) Shortly after beginning her job, Oliver learned

---

[1] Nordstrom, Inc. is the proper name of the Defendant.

that one of her co-workers was being stalked. (*Id*. ¶ 7.) During the investigation into her co-worker's claim, Oliver informed Nordstrom's security personnel that she had a Protection from Abuse Order against her ex-boyfriend. (*Id*. ¶ 8.) Upon request, she brought a copy of the order to work. (*Id*. ¶ 9.) On April 1, 2009, Oliver called the police because she received a threatening phone call from her ex-boyfriend's sister prior to work. (*Id*. ¶ 10.) That same day, Oliver was questioned about the Protection from Abuse Order. (*Id*. ¶ 12.) Nordstrom asked Oliver about her relationship with her ex-boyfriend and assured her they would maintain a safe working environment for her. (*Id*. ¶¶ 13-14.) During this questioning, Oliver informed Nordstrom that her ex-boyfriend had been arrested the previous day. (*Id*. ¶ 15.)

On April 11, 2009, a human resources manager told Oliver that her ex-boyfriend had posted bail and instructed Oliver not to return to work for three days. (*Id*. ¶ 20.) When Oliver called into work three days later, Nordstrom informed her that they did not believe they could keep her and her co-workers safe and she was therefore fired. (*Id*. ¶ 21.)

Oliver further alleges that Nordstrom excluded her from the premises after she was hired by Kinerase, a cosmetics company that had assigned her to a trade show on Nordstrom's property. (*Id*. ¶¶ 24-27.) The refusal to permit Oliver to enter Nordstrom's property has cost her money and employment opportunities. (*Id*. ¶ 30.) Plaintiff's Complaint includes claims for sex discrimination under Title VII and the Pennsylvania Human Relations Act (PHRA), wrongful termination, and intentional interference with contractual relations.

**B.     The Agreement to Arbitrate**

On February 17, 2009, Oliver signed a document that spelled out the Nordstrom Dispute Resolution Program. Her signature was "required to be considered for employment. It also

acknowledge[d] [she] . . . read, underst[ood] and agree[d] to the information." (Def.'s Mot. to Stay Judicial Proceedings Pending Arbitration Ex. A [Prospective Employee Information].) The agreement states:

> I understand that Nordstrom uses a Dispute Resolution Program to resolve many disputes and claims between employees and the Company and its agents that arise from employees' application for employment with Nordstrom, the termination of their employment with Nordstrom as well as other disputes or claims that arise from the employment relationship. I also understand that this means that certain disputes and claims must be resolved through Internal Company procedures or through final and binding arbitration. Such disputes and claims include claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Equal Pay Act, the Age Discrimination in Employment Act . . . the Rehabilitation Act of 1974, the Fair Labor Standards Act and any other federal, state or local statute, regulation or common law doctrine governing employment discrimination, conditions of employment, or termination of employment. Should I be employed by Nordstrom, I understand that I may not pursue courtroom litigation as a means to resolve disputes or claims between myself and the Company that are covered by the Dispute Resolution Program. My signature below acknowledges that I am aware of and agree to abide by the Company's Dispute Resolution Program.

(*Id*.)

After she was hired, Oliver signed an Employee Acknowledgment and Agreement Form, which highlighted the Nordstrom Dispute Resolution Program and stated that Oliver agreed to the program and understood that she waived the right to proceed against Nordstrom in court with covered claims and that she was instead required to pursue such claims through arbitration. (*Id*. Ex. B [Employee Acknowledgment and Agreement Form].) Nordstrom also provided Oliver a document entitled "Nordstrom Dispute Resolution Program Important Information for Pennsylvania Employees." (*Id*. Ex C [Pennsylvania Information].) This document informed Oliver that she was required to use Nordstrom's dispute resolution process "instead of a court proceeding, including a jury trial, to resolve covered claims against Nordstrom . . . that arise from or are in any way connected with your current or future employment." (*Id*.) Nordstrom was also required to use the

3

process in lieu of court proceedings. The process covered harassment and discrimination claims arising under Title VII and the PHRA; wage claims; contract claims; claims for damage to persons or property, including assault and battery, defamation, and emotional distress; and claims for unlawful discharge. (*Id*.) Unless the parties agreed, claims not covered by the program were not subject to arbitration. (*Id*.)

Oliver "recognizes the documents attached" to Nordstrom's motion although she claims they were presented to her on "a take it or leave it basis." (Pl.'s Resp. in Opp'n to Def.'s Mot. to Stay Judicial Proceedings [Pl.'s Resp.] Ex. 1 [Oliver Certification] ¶¶ 1, 3.) She also claims that one of Nordstrom's human resources employees told her that the policy was designed to resolve internal disputes or issues between employees. (*Id*. ¶ 5.) She did not understand that she was waiving her right to a jury trial. (*Id*. ¶ 6.)

## II. STANDARD OF REVIEW

The Federal Arbitration Act (FAA) provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Any "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id*. § 4. The FAA establishes the strong federal policy in favor of arbitration. *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010). The presumption in favor of arbitration, however, does not apply to the issue of whether a valid agreement to arbitrate exists. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

A district court decides a motion to compel arbitration under a summary judgment standard and gives the party opposing the motion the benefit of all reasonable doubts and appropriate inferences. *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009). Before compelling arbitration, a court must determine that: (1) a valid agreement to arbitrate exists; and (2) the particular dispute falls within the scope of the agreement. *Kirleis*, 560 F.3d at 160.

## III. DISCUSSION

### A. Validity of the Agreement to Arbitrate

"To determine whether the parties have agreed to arbitrate, we apply 'ordinary state-law principles that govern the formation of contracts.'" *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The parties concur that contract formation under Pennsylvania law requires: (1) a mutual manifestation of an intention to be bound by the agreement; (2) terms sufficiently definite to be enforced; and (3) consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

Oliver claims there is a genuine issue of material fact as to whether a meeting of the minds existed between her and Nordstrom because she believed the arbitration program was part of an open door policy that only mandated arbitration between employees, and that she did not understand that she was agreeing to arbitrate legal disputes with Nordstrom.

Oliver's misunderstanding of the bargain to which she consented does not render that bargain unenforceable. As a condition of employment with Nordstrom, Oliver agreed that the Nordstrom Dispute Resolution Program would be employed to resolve disputes and claims "between employees

5

and the Company and its agents." Furthermore, the agreement clearly states that arbitration applies to claims brought pursuant to Title VII, as well as claims under state laws governing employment discrimination and termination of employment. These are unquestionably claims against Nordstrom and extend beyond disputes between employees. Once employed, Oliver agreed to "use the Nordstrom Dispute Resolution Program instead of a court proceeding, including a jury trial, to resolve covered claims against Nordstrom." (Pennsylvania Information.) This clear language forecloses Oliver's argument that the arbitration program was designed for claims solely between employees. While Oliver may have misunderstood what the agreement encompassed, that does not provide a basis for ignoring the uncontroverted fact that she signed multiple documents in which she assented to arbitrate certain claims against Nordstrom and admitted that she was informed of the company's dispute resolution program. *See Richardson v. V.I. Port Auth.*, Civ. A. No. 09-136, 2010 WL 1641154, at *7-8 (D.V.I. Apr. 21, 2010) (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)). Finally, the Employee Acknowledgment and Agreement Form Oliver signed explicitly stated that she "understand[s] and agree[s] to the terms of the Program."

The Court also concludes that the terms of the agreement are sufficiently definite to be enforced and that the agreement to arbitrate as a condition of employment constitutes consideration. Thus, a valid agreement to arbitrate exists between Oliver and Nordstrom.

  **B. Unconscionability**

Oliver also contends that the arbitration agreement is procedurally unconscionable. Specifically, she claims her agreements with Nordstrom constituted a contract of adhesion between a national retailer and an individual with no leverage to negotiate effectively.

Procedural unconscionability involves "the process by which an agreement is reached and

the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 228 (3d Cir. 2008). An agreement is generally procedurally unconscionable if it is a contract of adhesion. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003). "A contract of adhesion is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis. " *Id*. (internal quotation omitted).

Procedural unconscionability alone is insufficient for a court to void an agreement to arbitrate; substantive unconscionability must also be demonstrated. *Id*.; *Zimmer*, 523 F.3d at 230 (noting that party challenging arbitration agreement "has the burden to demonstrate that the agreement is *both* procedurally and substantively unconscionable"); *Marotta v. Toll Bros., Inc.*, Civ. A. No. 09-2328, 2010 WL 744174, at *5 (E.D. Pa. Mar. 3, 2010) ("A plaintiff must establish both procedural and substantive unconscionability for a Court to render a contract unenforceable."). Substantive unconscionability refers to whether terms of the agreement unreasonably favor the party asserting it. *Zimmer*, 523 F.3d at 228.

Oliver has only addressed the agreement's purported procedural unconscionability. The Court finds no substantive unconscionability in the agreement, however, and therefore need not address whether the agreement is procedurally unconscionable. It is well established that parties may agree to arbitrate Title VII claims. *See Seus v. John Nuveen & Co.*, 146 F.3d 175, 182 (3d Cir. 1998) ("[W]e find Title VII entirely compatible with applying the FAA to agreements to arbitrate Title VII claims."); *see also Richardson*, 2010 WL 1641154, at *12 (collecting cases); *Underwood v. Chef Fransico/Heinz*, 200 F. Supp. 2d 475, 478 (E.D. Pa. 2002) ("There is no longer any doubt an employee may enter into an individual contract with his or her employer to arbitrate any and all

7

future disputes including federal statutory claims so long as Congress has not precluded such arbitration.") (citations omitted). The Court has reviewed the agreement and finds nothing substantively unconscionable about it. Thus, the agreement to arbitrate is not unenforceable as unconscionable.

### C. Scope of the Agreement

Nordstrom argues that all four of Oliver's claims fall within the scope of the arbitration agreement. The Title VII, PHRA, and wrongful termination claims are explicitly covered by the agreement. Oliver does not dispute this. However, she contends that her claim for intentional interference with contractual relations is not within the scope of the agreement.

Because the decision to arbitrate relies on an agreement between the parties, a court cannot force a party to arbitrate a dispute absent such an agreement. *AT & T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648-49 (1986). The parties may agree to arbitrate some, but not all, of their claims, "and thus even if a court finds that the parties have agreed to arbitrate *some* disputes it must find, to order arbitration, that the parties have agreed to arbitrate the dispute in issue." *Century Indem.*, 584 F.3d at 523. Once a court has determined that a valid agreement to arbitrate exists, whether "a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law." *Id*. at 524. Consistent with the federal policy favoring arbitration, a court should order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id*. (quoting *AT & T Techs.*, 475 U.S. at 650). If the allegations underlying the claims "touch matters" covered by the terms of a binding arbitration agreement, then those claims must be arbitrated. *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003). To determine whether a claim

8

falls within the scope of an arbitration agreement, a court should look at the facts alleged in the complaint and not focus on the legal theory articulated. *Medtronic AVE., Inc. v. Advanced Cardiovascular Sys.*, 247 F.3d 44, 55 (3d Cir. 2001).

The Court concludes that Oliver's intentional interference with contractual relations claim is not covered by the arbitration agreement. According to her Complaint, after she was fired by Nordstrom, she was hired by a cosmetics company whose products are sold by Nordstrom. (Compl. ¶ 45.) She alleges that Nordstrom told her new employer that she was not permitted to enter any Nordstrom location due to the Protection from Abuse Order she obtained. (*Id.* ¶ 47.) Because she was not allowed to enter a Nordstrom store, she was unable to work at a particular event and lost money and employment opportunities. (*Id.* ¶¶ 49-50.)

Nordstrom points to the agreement's verbiage that "claims for breach of any contract, covenant or warranty (express or implied) or promissory estoppel" are subject to arbitration to support its charge that this claim is covered. But the facts surrounding Oliver's claim do not arise out of a contract between Nordstrom and Oliver, and thus do not fall within the scope of this portion of the agreement. Indeed, her intentional interference with contractual relations claim sounds in tort, not contract. *See PSC Info Group v. Lason, Inc.*, 681 F. Supp. 2d 577, 593 (E.D. Pa. 2010). And although the agreement covers a number of tort claims, including damage to person or property, her allegations do not fall within the ambit of the torts covered by the arbitration agreement, which focus on torts such as invasion of privacy, slander, and defacing Nordstrom property. Furthermore, Nordstrom and Oliver agreed that the Nordstrom Dispute Resolution Program was used to "resolve many disputes and claims between employees and the Company." All of the alleged facts supporting her claim for intentional interference with contractual relations occurred while she was no longer

employed by Nordstrom. However broad the scope of the agreement, its reach does not extend to a claim by a former employee that she was barred from entering Nordstrom's property and thereby suffered injury.

Nordstrom contends that the tort asserted by Oliver is subject to arbitration because it applies to "many disputes and claims between employees and the Company and its agents that arise from . . . the employment relationship." (Def.'s Reply to Pl.'s Resp. in Opp'n to Def.'s Mot. to Stay Judicial Proceedings Pending Arbitration at 7.) There are several problems with Nordstrom's claim. First, the agreement applies to many, not all, disputes and claims. Second, this claim is not a dispute between an employee and the Company and one of its agents. Oliver was not an employee at the time this dispute arose and nothing in the Complaint asserts that Oliver's subsequent employer, Kinerase, was an agent of Nordstrom. Third, the intentional interference claim does not arise from the employment relationship but occurred outside that relationship.

The Court concludes that Oliver cannot be compelled to arbitrate that claim because the facts of the intentional interference with contractual relations claim are not intertwined with, nor do they touch upon, the claims that must be arbitrated. The fact that Nordstrom banned a former employee from entering a Nordstrom store based on a piece of information learned while she was employed by the company is not within the scope of the arbitration agreement given that the facts of the claim arose after Nordstrom fired her.

### D. Stay of Proceedings

For those claims subject to the arbitration agreement, the Court must issue a stay as requested by Nordstrom. *See* 9 U.S.C. § 3; *see also Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) (noting that FAA affords district court no discretion and that court must issue stay if lawsuit is

"brought on an arbitrable claim").

The intentional interference with contractual relations claim, however, is not subject to arbitration and thus a stay is not mandatory. Generally, courts have stayed all proceedings if some, but not all, claims are subject to arbitration. *See, e.g.*, *Hinnant v. Am. Ingenuity, LLC*, 554 F. Supp. 2d 576, 587-88 (E.D. Pa. 2008); *Heller v. Deutsche Bank AG*, Civ. A. No. 04-3571, 2005 WL 665052, at *6 (E.D. Pa. Mar. 17, 2005); *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 334 (E.D. Pa. 2004) ("Although these claims are not subject to arbitration, the FAA's requirement that a court stay 'the trial of the action' suggests that the proceedings must be stayed in their entirety, even when the action encompasses both arbitrable and non-arbitrable claims."). These cases have relied on the substantial overlap between parties and claims.

However, in this case, the Court finds no substantial overlap between the claims subject to arbitration and the claim not subject to arbitration. The elements of a cause of action for intentional interference with contractual relations include: (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) actual damage as a result of defendant's conduct. *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 98 (Pa. Super. Ct. 2009). Oliver claims that Nordstrom discriminated against her based on gender in addition to her intentional tort claim. While Nordstrom may offer a similar legal defense against those claims—that safety concerns necessitated Oliver's firing—that does not mean that these claims are related. Accordingly, the Court will permit Oliver to proceed with her tort claim in this Court simultaneously with the arbitration of her discrimination claims. *See Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 370 n.11 (E.D. Pa.

2003) (noting that the Supreme Court has required piecemeal litigation when necessary to effectuate arbitration agreement).

**IV. CONCLUSION**

Oliver agreed to arbitrate her discrimination claims and her wrongful termination claim, and this agreement is valid. She did not, however, agree to arbitrate her claim for intentional interference with contractual relations, which involves separate facts that occurred after her employment with Nordstrom ended. Therefore, the motion to compel arbitration is granted in part and denied in part and the Court will stay only those claims which the parties agreed to arbitrate. An Order consistent with this Memorandum will be docketed separately.